FUENTES, Circuit Judge.
We ordered rehearing en banc in three separate appeals to determine whether the *330 District Courts’ orders of restitution and forfeiture violated defendants’ Sixth Amendment right to trial by jury.
I.Background
In United States v. Paul J. Leahy, 2006 WL 335806, following trial, a jury found defendant Dantone, Inc. (“Dantone”), and its two senior managers, defendants Paul Leahy and Timothy Smith, guilty of engaging in, and aiding and abetting, bank fraud in violation of 18 U.S.C. § 1344.[1] Defendants’ convictions stemmed from their defrauding various banks out of profits derived from Dantone’s auctioning of 311 repossessed and after-lease cars on behalf of the banks. At sentencing, the District Court imposed prison sentences upon Leahy and Smith and entered orders of forfeiture in the sum of $418,657 and restitution in the sum of $408,970, jointly and severally, against all three defendants. Dantone, Leahy and Smith appeal both their convictions and the orders of forfeiture and restitution.[2]
In United States v. Kennard Gregg, 2006 WL 463876, after being arrested and charged for twice attempting to sell counterfeit money to a government informant, defendant Gregg pled guilty to two counts of dealing in counterfeit obligations in violation of 18 U.S.C. § 473. Gregg was sentenced to six months in prison and three years of supervised release, and ordered to pay restitution to the federal government in the amount of $350. He appeals only the restitution order.
In United States v. James C. Fallon, No. 03-4184, a jury convicted defendant Fallon of one count of wire fraud in violation of 18 U.S.C. § 1341, and three counts of mail fraud in violation of 18 U.S.C. § 1343 in connection with marketing his company’s Derma Peel skin treatment without FDA approval. Fallon was sentenced to 12 months in prison and ordered to pay restitution in the amount of $55,235. Fallon appeals both his conviction and the District Court’s restitution order.
In these appeals, all five of the defendants — Dantone, Leahy, Smith, Gregg and Fallon — challenge their respective restitution orders on Sixth Amendment grounds, arguing that, in accordance with United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the facts underlying the orders should have been submitted to a jury and established by proof beyond a reasonable doubt. Additionally, on the same grounds, Dantone, Leahy and Smith challenge their orders of forfeiture. We called for rehearing en banc to consider three sentencing issues: *331 tims Restitution Act (the “MVRA”).[4]
*330 1. Whether the decision of the Supreme Court in Booker applies to forfeiture;
2. Whether orders of restitution are a criminal penalty;
3. Whether Booker applies to orders of restitution under the Victim and Witness Protection Act (the “VWPA”)[3] and the Mandatory Vie-
*331 Because, in our view, restitution under the VWPA and the MVRA is not the type of criminal punishment that evokes Sixth Amendment protection under Booker, we conclude that the amount a defendant must restore to his or her victim need not be admitted by the defendant or proved to a jury beyond a reasonable doubt. As to forfeiture, based upon the Supreme Court’s decision in Libretti v. United States, 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995), we conclude that the amount a defendant must forfeit also need not be admitted or proved to a jury beyond a reasonable doubt.
II. Forfeiture and Booker
We consider first the constitutionality of the District Court’s forfeiture order in Leahy. Following trial, the District Court entered an order of forfeiture in the sum of $418,657, finding that the Government had proven by a preponderance of the evidence that this sum constituted the defendants’ “proceeds” from their fraudulent activity within the meaning of 18 U.S.C. § 982(a)(2).[5] The Leahy defendants contend that the imposition of forfeiture by the District Court under a preponderance of the evidence standard violated their Sixth Amendment right in light of the Supreme Court’s decisions in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Booker.
The Leahy defendants’ Sixth Amendment argument with respect to forfeiture cannot be reconciled with the Supreme Court’s decision in Libretti. In that case, the defendant entered a guilty plea in the middle of trial and agreed in his plea agreement to forfeit considerable property. Libretti, 516 U.S. at 33-34, 116 S.Ct. 356. He subsequently argued that his forfeiture plea colloquy was inadequate, in part because the District Court did not explain the right to a jury determination regarding forfeiture and in part because the District Court failed to obtain his express waiver of that right. Id. at 37-38, 116 *332 S.Ct. 356. The Supreme Court acknowledged that, pursuant to what was then Federal Rule of Criminal Procedure 31(e), a special jury verdict was required to permit an order of forfeiture.[6] Id. at 48-49, 116 S.Ct. 356. It nonetheless concluded that there was no Sixth Amendment right to a jury determination, rejecting the defendant’s claim that an express description and waiver of the jury right was a necessary component of the plea proceeding:
Without disparaging the importance of the right provided by Rule 31(e), our analysis of the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment’s constitutional protection. Our cases have made abundantly clear that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed.
Id. at 49. Libretti thus flatly holds that the Sixth Amendment is not implicated in the forfeiture context. See id. at 40-41, 116 S.Ct. 356 (rejecting defendant’s argument that forfeiture “is not ‘simply’ an aspect of sentencing, but is, in essence, a hybrid that shares elements of both a substantive charge and a punishment imposed for criminal activity”).
The Leahy defendants contend that Li-bretti has been undercut by Blakely and Booker to such an extent that its prece-dential value has been eroded. Even assuming that to be true, we nonetheless note that as a Court of Appeals, we are not free to ignore the Supreme Court’s holding in Libretti, nor do we possess the authority to declare that the Supreme Court has implicitly overruled one of its own decisions. See United States v. Ordaz, 398 F.3d 236, 241 (3d Cir.2005) (“[I]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.”) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)).
Defendants argue in the alternative that Libretti should be distinguished on the grounds that it addressed only the question of whether there exists a Sixth Amendment jury right to forfeiture determinations, not the constitutionally-mandated burden of proof, which they contend must be “beyond a reasonable doubt” after Booker. While there may be some tension between Booker and Libretti to the extent that the Libretti Court cites with approval its earlier statement in McMillan v. Pennsylvania that “[t]here is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact,” we are not dissuaded from our conclusion that Libretti controls the forfeiture issue here. 516 U.S. at 49, 116 S.Ct. 356 (quoting McMillan, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)).
We further observe that the other Courts of Appeals that have considered this issue have reached the same conclusion. See United States v. Fruchter, 411 F.3d 377, 382-83 (2d Cir.2005) (rejecting arguments that Sixth Amendment applies *333 to forfeiture and that Booker and Blakely require proof beyond reasonable doubt in forfeiture determinations; further holding that “Libretti remains the determinative decision”), cert. denied sub nom. Braun v. United States, — U.S. -, 126 S.Ct. 840, 163 L.Ed.2d 708 (2005); United States v. Hall, 411 F.3d 651, 655 (6th Cir.2005) (stating that “we fail to see how Booker ... allows us to turn our back on the Supreme Court’s prior ruling in this area (Libretti)”); United States v. Tedder, 403 F.3d 836, 841 (7th Cir.2005) (holding in pertinent part that Libretti remains binding Supreme Court precedent with respect to forfeiture and Sixth Amendment) cert. denied, — U.S. -, 126 S.Ct. 827, 163 L.Ed.2d 706 (2005).
For the foregoing reasons, we join our sister Courts of Appeals and hold that, even after Booker, the Sixth Amendment’s trial by jury protection does not apply to forfeiture, as Libretti remains Supreme Court authority by which we are bound.[7]
III. The Nature of Restitution
Before turning to Booker’s applicability to restitution under the MVRA and the VWPA, we consider whether restitution under these statutes is criminal or civil in nature. If we deem restitution to be civil, there is no Sixth Amendment concern because that Amendment’s protections apply only to criminal trials. We note first that restitution combines features of both criminal and civil penalties, as it is, on the one hand, a restoration to the victim by defendant of ill-gotten gains, while it is, at the same time, an aspect of a criminal sentence.
This is not the first time we have addressed this issue. In United States v. Syme, after reviewing several of our earlier cases, we stated that “[w]e consider restitution orders made pursuant to criminal convictions to be criminal penalties.” 276 F.3d 131, 159 (3d Cir.2002). Syme accordingly held that “restitution ordered under 18 U.S.C. § 3663 [the VWPA] constitutes ‘the penalty for a crime’ within the meaning of Apprendi.” Id.; see also United States v. Edwards, 162 F.3d 87, 91 (3d Cir.1998) (holding that restitution ordered under MVRA constitutes punishment for purpose of Ex Post Facto Clause analysis); United States v. Sleight, 808 F.2d 1012, 1020 (3d Cir.1987) (finding that under Federal Probation Act, restitution “remains inherently a criminal penalty”); United States v. Palma, 760 F.2d 475, 479 (3d Cir.1985) (holding that restitution ordered under VWPA is criminal penalty).
The Supreme Court has touched on this issue as well. In Pasquantino v. United States, a wire fraud case in which the MVRA applied, the Court noted:
Petitioners answer that the recovery of taxes is indeed the object of this suit, because restitution of the lost tax revenue to Canada is required under the [MVRA]. We do not think it matters whether the provision of restitution is mandatory in this prosecution. Regardless, the wire fraud statute advances the Federal Government’s independent interest in punishing fraudulent domestic criminal conduct, a significant feature absent from all of petitioners’ revenue rule cases. The *334 purpose of awarding restitution in this action is not to collect a foreign tax, but to mete out appropriate criminal punishment for that conduct
544 U.S. 349, -, 125 S.Ct. 1766, 1777, 161 L.Ed.2d 619 (2005) (footnote omitted and emphasis added). Pasquantino suggests that whether the restitution order being reviewed is mandatory or discretionary does not change the analysis. Moreover, and more importantly, Pasquantino clearly states that an award of restitution under the MVRA or the VWPA is a “criminal punishment.”
This latter stance is consistent with earlier Supreme Court precedent. In Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Court reviewed a Connecticut restitution statute in order to determine whether a restitution order was dischargeable in bankruptcy. The Court initially observed that “[t]he criminal justice system is not operated primarily for the benefit of victims.” Id. at 52, 107 S.Ct. 353. The Court went on to state that “[ajlthough restitution does resemble a judgment ‘for the benefit of the victim,” it is imposed in the context of a criminal sentence and “[t]he victim has no control over the amount ... or the decision to award” restitution. Id. Additionally, the Court noted that “the decision to impose restitution generally does not turn on the victim’s injury, but on the penal goals of the state and the situation of the defendant.” Id. Quoting the Bankruptcy Judge who decided the underlying issue, the Court finally observed that
[u]nlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.
Id. (citation omitted and emphasis added). In sum, the Kelly Court held that restitution granted in a state proceeding as a condition of probation could not be discharged because it constituted a criminal penalty enforced “for the benefit of’ the government and did not serve primarily as “compensation for actual pecuniary loss” under § 523(a)(7) of the bankruptcy code.[8] See id. at 51-52, 107 S.Ct. 353.
Of the other Courts of Appeals that have addressed this issue, only the Seventh and Tenth Circuits have held that restitution is a civil rather than a criminal penalty. See United States v. Newman, 144 F.3d 531, 542 (7th Cir.1998) (holding “restitution authorized by the VWPA (and mandatorily imposed under the MVRA) is not a criminal punishment for purposes of the Ex Post Facto Clause”); United States v. Nichols, 169 F.3d 1255, 1279-80 (10th Cir.1999) (adopting Seventh Circuit’s Newman holding that Ex Post Facto Clause does not bar application of restitution under MVRA). In contrast, the Fifth, Eighth, *335 Ninth, Eleventh and D.C. Circuits recognize that restitution, when ordered in connection with a criminal conviction, is a criminal penalty.[9]
Based upon our reading of Supreme Court precedent, we decline to overturn our precedent in Syme and instead reaffirm our view, consistent with the view of the majority of the Circuits to have addressed this issue, that restitution ordered as part of a criminal sentence is criminal rather than civil in nature.
IV. Restitution and Booker
We next turn to whether Booker applies to orders of restitution. The Leahy defendants were ordered to pay restitution under the VWPA, and the defendants in both Gregg and Fallon were ordered to do so under the MVRA. For purposes of determining whether Booker applies to orders of restitution under these two Acts, we believe the distinction between the permissive language of the VWPA and the mandatory language of the MVRA, see supra notes 3 and 4, is immaterial. See Pasquantino, 125 S.Ct. at 1777 (noting that whether restitution is mandatory or discretionary does not change government’s interest in enforcing orders of restitution). The primary issue we must therefore address is whether a defendant’s constitutional right to have certain facts found exclusively by a jury beyond a reasonable doubt, or admitted by the defendant, bars a judge from determining the sum of restitution he or she must pay. We hold that Booker extends no such protection to criminals under the Sixth Amendment.
A. Fact-Finding Under the Sixth Amendment
The Sixth Amendment provides that all criminal defendants “shall enjoy the right to a speedy and public trial, by an impartial jury.” In the series of recent decisions culminating in Booker, the Supreme Court considéred in depth the respective roles of judge and jury in the context of fact-finding and criminal sentencing. The central theme of the Booker line of cases has been that facts increasing the maximum penalty for a crime must be either admitted or proven to a jury beyond a reasonable doubt. The reasoning of these cases also led to a corresponding de-emphasis in the Court’s Sixth Amendment jurisprudence on the rigid classification of facts increasing penalties as either elements of a crime or sentencing factors. After Booker, the inquiry governing what facts may be found by judges now turns on the effect of the fact-finding on the defendant’s punishment, rather than the fact’s legislative classification.
The Court first articulated this principle in Jones v. United States, where it stated in a footnote that “any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.” 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). The Court affirmed *336 this principle in Apprendi v. New Jersey, where it held that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Four years later, the Court clarified in Blakely that the relevant “statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose based solely on facts reflected in the jury verdict or admitted by the defendant. Blakely, 542 U.S. at 303-04, 124 S.Ct. 2531.
In addition to refining its Apprendi holding, the Blakely Court rejected the presumption that “the jury need only find whatever facts the legislature chooses to label elements of the crime, and ... those it labels sentencing factors — no matter how much they may increase the punishment — may be found by the judge.” 542 U.S. at 306, 124 S.Ct. 2531. The constitutional problem with such a presumption is that it allows legislatures to subvert the Sixth Amendment jury right by terming practically any fact a “sentencing fact,” thereby reducing the number of facts that need to be proven to'a jury for conviction. See id. at 306-07, 124 S.Ct. 2531 (“The jury could not function as circuitbreaker in the State’s machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish.”) (emphasis in original). This concern, foreshadowed in Apprendi,[10] dovetailed with the Court’s greater concern that “[w]hen a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.” Id. at 304, 124 S.Ct. 2531 (internal citation and quotation marks omitted). Thus, the legislative labeling of a fact as an element or sentencing factor is no longer significant in determining whether it may or may not be constitutionally found by a judge. Rather, under Blakely, the central consideration is the effect a given fact may have on a defendant’s maximum punishment. In short, for purposes of sentencing under Apprendi and Blakely, whether a fact is labeled a sentencing fact or an element of the offense is of no consequence.
The Booker Court confirmed the insignificance of legislative labeling in this context by asserting that “the characterization of a fact or circumstance as an ‘element’ or ‘sentencing factor’ is not determinative of the question ‘who decides,’ judge or jury.” 125 S.Ct. at 749 (citation omitted). More important for our purposes, the Booker Court reaffirmed the reasoning of Appren-di and Blakely and applied it to invalidate the Federal Sentencing Guidelines, holding that “[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.” Id. at 756. Thus, the key inquiry in determining the applicability of Booker to an order of restitution under the VWPA or the MVRA is whether a judge’s calculation of the sum a defendant must restore to his or her victim constitutes an increase in punishment ex *337 ceeding that authorized by plea or jury verdict, in violation of the Sixth Amendment.
B. Restitution Does Not Exceed the Statutory Maximum
Under both the VWPA and the MVRA, when a defendant is convicted of certain specified offenses, restitution is authorized as a matter of course “in the full amount of each victim’s losses.” 18 U.S.C. § 3664(f)(1)(A). Hence, under a plain reading of the governing statutory framework, the restitution amount authorized by a guilty plea or jury verdict — the full amount of loss — may not be exceeded by a district court’s restitution order; that is, a district court is not permitted to order restitution in excess of that amount. In imposing restitution, a district court is thus by no means imposing a punishment beyond that authorized by jury-found or admitted facts. Though post-conviction judicial fact-finding determines the amount of restitution a defendant must pay, a restitution order does not punish a defendant beyond the “statutory maximum” as that term has evolved in the Supreme Court’s Sixth Amendment jurisprudence. See Booker, 125 S.Ct. at 749 (defining “statutory maximum” as “the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant”) (citing Blakely, 542 U.S. at 303, 124 S.Ct. 2531) (emphasis in original); see also United States v. Sosebee, 419 F.3d 451, 462 (6th Cir.2005) (“Nor does [] Booker’s analysis of the Sixth Amendment affect restitution, because a restitution order for the amount of loss cannot be said to ‘exceed the statutory maximum’ provided under the penalty statutes.”). There can therefore be no Booker violation in the imposition of restitution under the VWPA or the MVRA.
Defendants argue that until a district court makes a factual finding as to the amount of loss, restitution is not authorized in any amount. As we read the statute, once a defendant is convicted of an offense covered by the VWPA or the MVRA, a district court must (or in the case of the VWPA, unquestionably may) order restitution, and in order to fulfill this mandate, the court must determine the amount of loss pursuant to 18 U.S.C. § 3664(f)(1)(A). Under the defendants’ view, the conviction itself yields a restitution amount of zero dollars, and the factual finding of the amount of loss therefore increases the sentence beyond the maximum sum authorized by the facts, in violation of Booker. On the contrary, we see the conviction as authorizing restitution of a specific sum, namely the “full amount of each victim’s loss”; when the court determines the amount of loss, it is merely giving definite shape to the restitution penalty born out of the conviction.[11] Thus, there is no restitution range under 18 *338 U.S.C. § 3664(f)(1)(A) that starts at zero and ends at “the full amount of each victim’s losses”; rather, the single restitution amount triggered by the conviction under the MVRA, or permitted under the VWPA, is the full amount of loss. For these reasons, we join the Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Circuits and hold that Booker does not apply to orders of restitution under the MVRA and VWPA.[12]
This conclusion is consistent with our view that orders of restitution have little in common with the prison sentences challenged by the defendants in Jones, Ap-prendi, Blakely and Booker. In those eases, the Supreme Court was faced with “exceptional” and “enhanced” sentences that added anywhere from two to ten years to the prison terms authorized by the facts found by the jury or pled to by the defendants. See Blakely, 542 U.S. at 299, 124 S.Ct. 2531; see also Booker, 125 S.Ct. at 747 n. 1. In contrast, the restitution ordered in Leahy, Gregg and Fallon was explicitly authorized by the defendants’ pleas and convictions, and merely required the defendants to return property and proceeds obtained as a result of the offense of conviction.
Restitution is, at its essence, a restorative remedy that compensates victims for economic losses suffered as a result of a defendant’s criminal conduct. In this sense, even though restitution is a criminal punishment, it does not transform a defendant’s punishment into something more severe than that authorized by pleading to, or being convicted of, the crime charged. Rather, restitution constitutes a return to the status quo, a fiscal realignment whereby a criminal’s ill-gotten gains are returned to their rightful owner. In these circumstances, we do not believe that ordering a convicted defendant to return ill-gotten gains should be construed as increasing the sentence authorized by a conviction pursuant to Booker.[13]
V. Conclusion
For the foregoing reasons, we conclude that restitution under the VWPA and the MVRA is a criminal penalty and that the Sixth Amendment right to jury determinations of certain facts as articulated in Booker does not apply to forfeiture or to *339 orders of restitution imposed as part of a criminal sentence under those two statutes.

. This case was tried together with United States v. Dantone, Inc., No. 03-4560, and United States v. Timothy Smith, No. 03-4542.

. Defendants’ appeal of their criminal convictions in this case, as well as in United States v. Fallon, infra, will be addressed in separate opinions.

. The VWPA reads in pertinent part:
(a)(1)(A) The court, when sentencing a defendant convicted of an offense under this title ..., other than an offense described in section 3363A(c), may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense ....
(a)(l)(B)(i) The court, in determining whether to order restitution under this section, shall consider-
*331 (I) the amount of the loss sustained by each victim as a result of the offense; and
(II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant’s dependents, and such other factors as the court deems appropriate.
(a)(l)(B)(ii) To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order.
18 U.S.C. § 3663.

. Passed by Congress in 1996, the MVRA augmented and partially superseded the VWPA by requiring district courts to impose restitution on defendants convicted of certain offenses without regard to their ability to pay. See 18 U.S.C. § 3663A(a)(l) ([T]he court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense ....) (emphasis added). Both the VWPA and the MVRA are enforced via 18 U.S.C. § 3664, which states in pertinent part:
In each order of restitution, the court shall order restitution to each victim in the full amount of each victim’s losses as determined by the court and without consideration of the economic circumstances of the defendant.
18 U.S.C. § 3664(f)(1)(A).

. 18 U.S.C. § 982(a)(2) states in pertinent part:
The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate -
(A) section ... 1344 of this title, affecting a financial institution....
shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

. Former Rule 31(e) stated: "[I]f the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any.” Rule 31(e) and other procedural rules governing the forfeiture of assets in a criminal case were consolidated into a new Rule 32.2 governing "Criminal Forfeiture.”

. We note that Booker expressly states that 18 U.S.C. § 3544, a provision of the sentencing law that requires a district court to impose forfeiture on a defendant convicted under RICO, is still “perfectly valid.” Booker, 125 S.Ct. at 764 (Breyer, J., remedial majority opinion). Although the forfeiture provision identified in Booker is not the same provision at issue in this case, “Booker itself suggests that a district court's forfeiture determination under [the RICO forfeiture statute] does not offend the Sixth Amendment.” Fruchter, 411 F.3d at 382.

. Section 523(a)(7) reads:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition ....
11 U.S.C. § 523(a)(7).

. See United States v. Rico Indus., Inc., 854 F.2d 710, 714 (5th Cir.1988) ("Restitution is a criminal penalty.”); United States v. Williams, 128 F.3d 1239, 1241 (8th Cir.1997) ("We conclude an order of restitution under the MVRA is punishment for Ex Post Facto Clause purposes.”); United States v. Miguel, 49 F.3d 505, 509 (9th Cir.1995) ("The [VWPA] also clearly indicates that restitution is a penalty available to sentencing courts regardless of other criminal penalties that may be imposed.”); Creel v. Comm'r of Internal Revenue, 419 F.3d 1135, 1140 (11th Cir.2005) (“[A]n order to pay restitution under 18 U.S.C. § 3663 [the VWPA] is a criminal penalty rather than a civil penalty.”); United States v. Bapack, 129 F.3d 1320, 1327 n. 13 (D.C.Cir.1997) (endorsing the Second Circuit's approach in Thompson).

. In a footnote, the Apprendi Court commented that "when the term 'sentence enhancement’ is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury’s guilty verdict. Indeed, it fits squarely within the usual definition of an ‘element’ of the offense.” 530 U.S. at 494 n. 19, 120 S.Ct. 2348.

. We agree with our dissenting colleagues that "the relevant inquiry is not of form, but of effect-does the required finding [of the amount of loss] expose the defendant to a greater punishment than that authorized by the jury's verdict?” McKee Dis. Op. (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348). As we note throughout this Subsection, however, we do not believe that determining the "full amount of each victim’s losses” in any way "exposes” a defendant to a greater punishment than that "authorized by the jury’s verdict.” Indeed, the jury's verdict automatically triggers restitution in the "full amount of each victim’s losses,” and under the MVRA restitution is not only "authorized” (as it undoubtedly also is under the VWPA), it is required. We therefore cannot accept our dissenting colleagues assertion that uncovering the specific sum lost by a defendant's victims amounts to exposure to a punishment greater than that authorized by a jury’s verdict, as full restitution is explicitly authorized under the two Acts at issue here. This logic of course extends to defendants who plead guilty as well.

. See United States v. Garza, 429 F.3d 165, 170 (5th Cir.2005) (per curiam) ("We agree with our sister Circuits, who have uniformly held that judicial fact-finding supporting restitution orders does not violate the Sixth Amendment.”); Sosebee, 419 F.3d at 461 (6th Cir.2005) ("Given existing Sixth Circuit precedent and recent decisions of the other circuits on this issue, we now conclude that Booker does not apply to restitution and, thus, that Sosebee's Sixth Amendment challenge has no merit.”); United States v. George, 403 F.3d 470, 473 (7th Cir.2005) ("We have accordingly held that Apprendi v. New Jersey ... does not affect restitution ... and that conclusion is equally true for Booker.”); United States v. May, 413 F.3d 841, 849 (8th Cir.2005) ("[Sjeveral circuits have affirmatively rejected the notion that Apprendi, Blakely, or Booker affect the manner in which findings of restitution can be made.... These cases are persuasive.”); United States v. Bussell, 414 F.3d 1048, 1060 (9th Cir.2005) ("In contrast to its application of the Sentencing Guidelines, the district court's orders of restitution and costs are unaffected by the changes worked by Booker.”); United States v. Visinaiz, 428 F.3d 1300, 1316 (10th Cir.2005) (noting that “Blakely and Booker do not apply to restitution” because "[i]n the Tenth Circuit, restitution is not a criminal punishment”) (citations omitted).

. We recognize, of course, that the key question under the Booker analysis is whether the judicial fact-finding required by the VWPA and the MVRA exposes a defendant to greater punishment than that authorized by a jury verdict or guilty plea. As discussed above, we hold that an order of restitution based on such fact-finding does not violate a defendant’s Sixth Amendment rights.