NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4190
_____

UNITED STATES OF AMERICA

v.

ORONDA LIGON,

                                 Appellant


_____


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Cr. Action No. 12-cr-00454-1)
District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2014
_____

Before: RENDELL, GREENAWAY, JR., SLOVITER, *Circuit Judges*.

(Opinion Filed: September 26, 2014)


_____

OPINION
_____


1

GREENAWAY, JR., *Circuit Judge*.

Oronda Ligon ("Ligon" or "Appellant") was convicted of robbery which interferes with interstate commerce, in violation of the Hobbs Act, 18 U.S.C. § 1951. The District Court sentenced Ligon to 108 months' imprisonment. For the foregoing reasons, we will affirm the District Court's judgment of conviction.

## I. FACTUAL BACKGROUND

Because we write primarily for the parties who are familiar with the facts and procedural history, we recount only the essential facts.

Hieng Ngo ("Ngo") and her husband owned Big Top Beverage, a beer and beverage distributor in Philadelphia, Pennsylvania. Their business sold beer and other items that were originally purchased from out-of-state and out-of-the-country. Ngo and her husband were in the habit of storing the proceeds from Big Top Beverage in a safe in the master bedroom of their home. Business proceeds were routinely stored in the safe over the weekend until they could be deposited in the bank on the next business day. At those times, the safe held business proceeds from Big Top Beverage as well as family jewelry and personal funds.

On May 2, 2011, Ngo was alone in her home. While showering in the basement, she heard a noise on the first floor. Wearing only a towel, she went upstairs to investigate. Once upstairs, she saw Oronda Ligon along with a second man inside her

2

home, and a third man outside. "[R]obbery, robbery," Ngo yelled hoping to scare the three men. (App. 178.) Ligon stood with the safe next to him on the floor, but then he pushed Ngo to the ground and told the man outside to "give her the gun." (App. 183.) The man outside pointed a gun close to Ngo's chest. The men then carried the safe outside. Ngo, still wearing only a towel, ran outside after them and yelled to her neighbors for help. A neighbor saw someone run out of Ngo's home and drive away in a dark SUV. The neighbor reported the SUV's license number to the police. Two other bystanders saw a man jump into a black SUV which had stopped near Ngo's home and then sped off down a nearby street. Besides the safe, Ngo testified that her purse containing additional business proceeds was also stolen.

The license plate was traced to a red Saab, owned by Andrew Kovets ("Kovets"). The license plate was discovered to be missing from the Kovets' Saab shortly after the date of the robbery. Ligon's friend Wilbert Golden owned a parking lot and testified that Ligon had visited the lot when Kovets' Saab was present prior to the robbery. William Cooper ("Cooper"), another of Ligon's friends, testified that Ligon admitted to robbing Ngo. Cooper also testified that Ligon admitted having said he targeted Ngo because he believed Asians kept large amounts of money in their homes because "they didn't believe in banks." (App. 368.)

Two days after the robbery, Ngo identified Ligon from a police photo array as the man who had pushed her down, instructed the man outside to "give her the gun," and

3

carried the safe outside her home. (App. 183.) Ligon was indicted on one count of interference with interstate commerce by robbery, one count of use of a firearm during a crime of violence, and aiding and abetting both crimes. A jury convicted Ligon on the robbery count, but acquitted him on the firearm count. The District Court determined that the total value of stolen property was $54,900, which included $25,000 in business proceeds contained in the stolen safe and $9,700 in business proceeds held in Ngo's stolen purse.

At sentencing, the District Court imposed sentence enhancements for a loss calculation exceeding $50,000 and brandishing a firearm. With a category III criminal history, Ligon's advisory Guidelines sentence range was 87 to 108 months' imprisonment. At the conclusion of the sentencing hearing, the District Court imposed 108 months' imprisonment, three years' supervised release, restitution of $59,357.00, and the special assessment of $100.00. This timely appeal followed.

## II. JURISDICTION

The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 3742(a).

## III. ANALYSIS

*A. Sufficiency of the Evidence*

4

Appellant argues that evidence presented at trial was insufficient to show the effect of the robbery on interstate commerce, as is required by the Hobbs Act. This Court has plenary review over challenges to the sufficiency of the evidence. *United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998).

Under Supreme Court precedent, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court affords "deference to a jury's findings . . . [and] draw[s] all reasonable inferences in favor of the jury verdict." *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996) (internal quotation marks and citation omitted).

The Hobbs Act criminalizes "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property . . . ." 18 U.S.C. § 1951. Under this Court's precedent, a robbery under the Hobbs Act need only have a "reasonably probable effect on commerce, however minimal." *United States v. Urban*, 404 F.3d 754, 763-64 (3d Cir. 2005).

Appellant's claim here fails because sufficient evidence was presented at trial that could have suggested to a jury that the robbery at hand had a reasonably probable effect on commerce. For one, Cooper, who had known Ligon for four years, identified Ligon as

5

the source of the "knowledge about the robbery of Big Top Beer and the house that was robbed[.]" (*See* App. 371.) Ngo also testified that merely a couple of days prior to the robbery, a "black jeep follow[ed] us to park [on] the street . . . across [the] street from [her] house[,]" which caused her to believe that "maybe we [are] not safe here[.]" (App. 188.) The jury, in addition, heard testimony that Ligon targeted Asians and drove a black "Jeep Grand Cherokee." (App. 369.) These facts are sufficient for the jury to find a violation of the Hobbs Act. As we observed recently, the "targeting and the resultant robberies of . . . owners were sufficient for a rational jury to conclude beyond a reasonable doubt that the 'natural consequences' of [defendant's] actions were an actual or potential effect on interstate commerce." *United States v. Powell*, 693 F.3d 398, 405 (3d Cir. 2012).

Therefore, the evidence was sufficient for the jury to find that Appellant had violated the Hobbs Act.

*B. Jury Instruction*

Appellant next argues that the District Court erroneously instructed the jury that the evidence needs to show only a *de minimis* or potential effect on interstate commerce. This Court exercises plenary review to determine whether the jury instructions stated the proper legal standard. *See United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006).

This claim must fail. The District Court followed the Third Circuit model jury

6

instruction, which we have approved on a prior occasion. *See Powell*, 693 F.3d at 406-07. Indeed, Appellant concedes that "this Circuit's binding precedent forecloses relief on this claim at this time." (Appellant Br. 31.)

Appellant's argument that the jury instruction was erroneous on grounds that it conflicts with the Supreme Court's jurisprudence cabining Congress's exercise of Commerce Clause power also fails. We have previously rejected such challenges. Because the Hobbs Act contains a jurisdictional element and criminalizes the fundamentally economic crimes of robbery and extortion, violations of the Act have a substantial effect on interstate commerce in the aggregate, and the government need not prove a substantial effect in each individual case. *See United States v. Shavers*, 693 F.3d 363, 372-73 (3d Cir. 2012).

Therefore, the District Court did not err in instructing on the interstate commerce element of the Hobbs Act.

*C. Fact Finding Relevant to Guidelines Range*

Appellant next argues that the District Court violated his Sixth Amendment right to jury trial by applying Sentencing Guidelines enhancements based on conduct not proved to the jury beyond a reasonable doubt. We exercise plenary review over this claim. *See United States v. Williams*, 235 F.3d 858, 861 (3d Cir. 2000).

In a seminal opinion, the Supreme Court held that district courts may consider acquitted conduct at sentencing. *United States v. Watts*, 519 U.S. 148, 157 (1997). Following *Watts*, this Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge." *United States v. Ciavarella*, 716 F.3d 705, 735 (3d Cir. 2013) (quoting *Watts*, 519 U.S. at 157) (internal quotation marks omitted). Under our precedent, "[j]udicial factfinding in the course of selecting a sentence within the permissible range does not offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt." *United States v. Grier*, 475 F.3d 556, 562 (3d Cir. 2007) (en banc).

Here, the District Court made factual findings relevant in selecting a sentence within the prescribed statutory range. Because the jury verdict merely demonstrates that there was a reasonable doubt of at least one of the elements of Section 924(c), this did not preclude the District Court from making factual findings at sentencing under the preponderance of the evidence standard. *Id*. Moreover, contrary to Appellant's claim, the Supreme Court's recent pronouncement in *Alleyne v. United States* "did not curtail a sentencing court's ability to find facts relevant in selecting a sentence *within* the prescribed statutory range." *United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014); *see also Alleyne v. United States*, 133 S. Ct. 2151, 2161 n.2 (2013) ("While [factfinding used to guide judicial discretion in selecting punishment] may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth

8

Amendment does not govern that element of sentencing.").

Therefore, the District Court did not violate Appellant's Sixth Amendment right.


*D. Reasonableness of the Sentence*

Appellant claims that the District Court failed to address his argument for a variance, rendering his sentence procedurally and substantively unreasonable. Because no objection was made in the District Court, we review for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014). Appellant's substantive objection to a sentence is reviewed under the abuse-of-discretion standard. *See United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008).

We first turn to Appellant's procedural reasonableness claim. Under this Court's precedent, "the record should demonstrate that the court considered the 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record." *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006). Here, the record sufficiently demonstrates that the District Court meaningfully considered Appellant's contention. (*See, e.g.*, App. 616 ("[S]tarting with the need to protect the public from further crimes, I place great weight on that section of 3553. I've also discussed the nature and circumstances of the offense, a very, very serious crime. It could have ended up as a homicide and irreparable harm to the victim. So it's a very serious sentence. I'm going to impose [a sentence] which is at the high end

9

of the Guideline range."); App. 617 ("I considered the types of sentences available, the Guidelines sentencing ranges and Policy Statements, [and] sentencing disparities[.]").)

Because the District Court's sentence is procedurally reasonable, we now review the substantive reasonableness of the sentence. *See United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). Our substantive review focuses on the totality of the circumstances and is highly deferential. *Id.* Here, we do not find that the District Court abused its discretion. Ligon executed a home invasion with a gun that was premeditated and targeted a certain minority group. Under these circumstances, the District Court was soundly within its discretion to impose a sentence at the high end of the Guidelines range.

Therefore, the District Court committed no error in imposing Appellant's sentence.

*E. Fact Finding for Restitution*

Appellant argues that the District Court committed plain error in failing to submit to a jury for determination beyond a reasonable doubt the amount of restitution owed to the victim. Because Appellant did not object to this claim in the District Court, we review for plain error. *See United States v. Vazquez*, 271 F.3d 93, 99 (3d Cir. 2001) (en banc).

From the outset, we note that the same line of argument advanced by Appellant here was rejected by this Court in *United States v. Leahy*, 438 F.3d 328, 337-38 (3d Cir.

2006) (en banc).  There, we held that restitution "is a criminal penalty and that the Sixth Amendment right to jury determinations of certain facts as articulated in *Booker* does not apply to forfeiture or to orders of restitution imposed as part of a criminal sentence under those two statutes." *Id.* at 338-39.  This precedent is fatal to Appellant's claim, as the plain error standard requires proof that the error is clear under current law.  *See United States v. Olano*, 507 U.S. 725, 734 (1993) (holding that a "court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law").  Here, the law is at best contrary to Appellant's position.

Therefore, the District Court did not commit plain error in determining the restitution owed to the victim.

## IV. CONCLUSION

For the foregoing reasons, we will affirm judgment of conviction of the District Court.

11