# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20560

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

OLUSOLA ELLIOTT,

Defendant–Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CR-249-1

Before KING, DAVIS, and OWEN, Circuit Judges.

PER CURIAM:*

 Olusola Elliott was convicted of health care fraud and conspiracy to commit health care fraud under 18 U.S.C. §§ 2, 1347 and 1349. The district court sentenced Elliott to 84 months of imprisonment and ordered restitution in the amount of $561,934.12. Elliott contends that he has a constitutional right to have a jury find the amount of restitution beyond a reasonable doubt.

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20560

He additionally contends that the district court's finding of the intended loss was clearly erroneous. We affirm.

## I

Elliott owned and operated Double Daniels, LLC, which provided non-emergency care ambulance services. He was charged with one count of conspiracy to commit health care fraud and six counts of health care fraud. The superseding indictment alleged that Elliott submitted approximately $1,713,716 in fraudulent claims to Medicare.

The evidence adduced at trial indicated that Elliott directed Double Daniels employees to falsify claims sheets submitted to Medicare. Elliott instructed Double Daniels emergency medical technicians to indicate, for example, that a patient required restraint when he or she did not, or that patients were transported individually when they were in fact transported together. The jury convicted Elliott on all seven counts.

The jury was not asked to make a finding regarding restitution or the amount of loss sustained by Medicare. At the sentencing hearing, the district court ordered Elliott to pay $561,934.12 in restitution, and the district court found that the loss Elliott intended to cause was the amount of the claims that he submitted to Medicare, which totaled $1,713,716. Because the intended loss exceeded $1,000,000, the court imposed a 16-level enhancement to Elliott's base offense level pursuant to USSG § 2B1.1(b)(1)(I). The court sentenced Elliott to serve a term of 84 months of imprisonment.

Elliott now appeals.

No. 13-20560

## II

Relying on *Apprendi v. New Jersey*,[1] *Southern Union Co. v. United States*[2] and *Alleyne v. United States*,[3] Elliott contends that the restitution order violates the Sixth Amendment because the amount of the award was found by the district court judge, not the jury, and the district court based its finding on a preponderance of the evidence rather than finding the amount beyond a reasonable doubt. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[4] In *Southern Union*, the Court held that *Apprendi* applies to the imposition of criminal fines,[5] and in *Alleyne*, the Court extended *Apprendi* to any fact that increases a defendant's mandatory minimum sentence.[6]

Elliott acknowledges in his reply brief that a decision of this court,[7] issued after the initial briefing in this case was submitted, forecloses his Sixth Amendment argument before this panel. We agree that our court's decision in *Rosbottom* is binding on this panel. We additionally conclude that we are bound by this court's decision in *United States v. Read*, in which a panel of this court held that the requirements of *Apprendi* do not apply to restitution

---

[1] 530 U.S. 466 (2000).

[2] 132 S. Ct. 2344 (2012).

[3] 133 S. Ct. 2151 (2013).

[4] *Apprendi*, 530 U.S. at 490; *see also Blakely v. Washington*, 542 U.S. 296, 303 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (emphasis omitted)).

[5] *S. Union*, 132 S. Ct. at 2357.

[6] *Alleyne*, 133 S. Ct. at 2158.

[7] *United States v. Rosbottom*, 763 F.3d 408, 420 (5th Cir. 2014).

3

orders.[8]  Under the well-settled Fifth Circuit rule of orderliness, "one panel of our court may not overturn another panel's decision absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court."[9]

We recognize that there is some tension between statements of the Supreme Court in *Southern Union Co. v. United States*[10] and our court's conclusion that the Sixth Amendment does not require a jury to find the amount of restitution.  In *Southern Union*, the Supreme Court noted that under some statutes, the amount of a fine "is the amount of the defendant's gain or the victim's loss."[11]  The Court then concluded, "[i]n all such cases, requiring juries to find beyond a reasonable doubt facts that determine the fine's maximum amount is necessary to implement *Apprendi*'s 'animating principle': the 'preservation of the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense.'"[12]  The Supreme Court continued, explaining that "[i]n stating *Apprendi*'s rule, we have never distinguished one form of punishment from another.  Instead, our decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s]'—terms that each undeniably embrace fines."[13]  It is arguable that when a statute requires restitution based on the amount of loss to the victim, restitution is part of a "sentence" and comes within the Supreme Court's rationale that led to its decision in *Southern*

---

[8] *United States v. Read*, 710 F.3d 219, 231 (5th Cir. 2012).

[9] *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

[10] 132 S. Ct. 2344 (2012).

[11] *Id.* at 2351.

[12] *Id.* (quoting *Oregon v. Ice*, 555 U.S. 160, 168 (2009)).

[13] *Id.* (alterations in original).

*Union.* That is not a matter for this panel to resolve, however, in light of this circuit's precedent.

In *Rosbottom*, a panel of this court considered whether *Southern Union* extended *Apprendi* to restitution but nonetheless affirmed *Read*'s reasoning that "*Apprendi* is inapposite because no statutory maximum applies to restitution."[14] Our decision in *Rosbottom* was also decided *after Alleyne*.[15] We are therefore bound by our court's rule of orderliness to reject Elliott's contention that restitution orders cannot be supported by judge-found facts.[16] Though the present case concerns restitution, not forfeiture, we also note that the Supreme Court has not expressly overruled its holding in *Libretti v. United States*, which held that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection."[17]

### III

The district court assessed a 16-level enhancement to Elliott's base offense level because it found the intended loss to be $1,713,716, the amount of Elliott's fraudulent billings to Medicare. Elliott contends that he did not intend to recoup the full amount he billed, given Medicare's practice of regularly reimbursing providers at amounts below the amount billed.

---

[14] *United States v. Rosbottom*, 763 F.3d 408, 420 (5th Cir. 2014) (quoting *United States v. Read*, 710 F.3d 219, 231 (5th Cir. 2012)); *accord United States v. Green*, 722 F.3d 1146, 1149-51 (9th Cir. 2013) (holding *Apprendi* does not apply to restitution); *United States v. Day*, 700 F.3d 713, 731-32 (4th Cir. 2012) (same); *United States v. Milkiewicz*, 470 F.3d 390, 403-04 (1st Cir. 2006) (same); *United States v. Reifler*, 446 F.3d 65, 114-20 (2d Cir. 2006) (same); *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006) (same); *United States v. Leahy*, 438 F.3d 328, 338 (3d Cir. 2006) (en banc) (same); *United States v. Sosebee*, 419 F.3d 451, 461-62 (6th Cir. 2005) (same); *United States v. May*, 413 F.3d 841, 849 (8th Cir. 2005) (same); *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) (same); *United States v. Wooten*, 377 F.3d 1134, 1144-45 (10th Cir. 2004) (same).

[15] *See Alleyne v. United States*, 133 S. Ct. 2151 (2013) (decided June 17, 2013); *Rosbottom*, 763 F.3d 408 (decided August 13, 2014).

[16] *Rosbottom*, 763 F.3d at 420; *Read*, 710 F.3d at 231.

[17] 516 U.S. 29, 49 (1995).

"The amount of loss resulting from . . . fraud is a specific offense characteristic that increases the base offense level under the [sentencing guidelines]."[18] The commentary to the guidelines defines "loss" as "the greater of actual loss or intended loss."[19] When the amount of the loss exceeds $1,000,000 but is not more than $2,500,000, a defendant receives a 16-level enhancement, whereas when the amount of loss exceeds $400,000 but is not more than $1,000,000, a defendant receives only a 14-level enhancement.[20]

We review the district court's method of determining loss de novo and its factual findings for clear error.[21] "Under the clear error standard, we defer to the findings of the district court unless we are left with a definite and firm conviction that a mistake has been committed."[22]

In health care fraud cases, the government must "prove by a preponderance of the evidence that the defendant had the subjective intent to cause the loss that is used to calculate his offense level."[23] While Elliott asserts that "the record is devoid of *any* evidence" supporting the loss amount, "the amount fraudulently billed to Medicare/Medicaid is prima facie evidence of the amount of loss the defendant intended to cause."[24] The "parties may introduce

---

[18] *United States v. Isiwele*, 635 F.3d 196, 202 (5th Cir. 2011).

[19] U.S.S.G. § 2B1.1 cmt. n.3(A).

[20] U.S.S.G. § 2B1.1(b)(1)(H)-(J).

[21] *Isiwele*, 635 F.3d at 202 (citing *United States v. Harris*, 597 F.3d 242, 251 n.9 (5th Cir. 2010)).

[22] *United States v. Brooks*, 681 F.3d 678, 689 (5th Cir. 2012) (quoting *United States v. Avants*, 367 F.3d 433, 441 (5th Cir. 2004)).

[23] *United States v. Valdez*, 726 F.3d 684, 696 (5th Cir. 2013) (quoting *Isiwele*, 635 F.3d at 203).

[24] *Valdez*, 726 F.3d at 696 (quoting *Isiwele*, 635 F.3d at 203).

additional evidence to suggest that the amount billed either exaggerates or understates the [defendant's] intent."[25]

Prior to his sentencing hearing, but after trial, Elliott submitted an affidavit to the district court stating that he was aware "during the operation of the Double Daniels business" that Medicare "paid much less than what was submitted" in claims. Elliott argued to the district court that its finding of intended loss should reflect Elliott's knowledge of Medicare's reimbursement practices. He contended that the amount Medicare actually reimbursed Double Daniels, $561,924.12, rather than the amount Elliott fraudulently billed, $1,713,716, should be used to calculate his base offense level. The district court was unpersuaded for several reasons. The court observed that when Elliott testified at trial, "he never claimed . . . that he intended or that he expected Medicare to pay less than the amount of the claims that he filed." The court was further influenced by the fact that Elliott allowed third parties to handle his billing claim sheets.

Elliott now argues that *United States v. Valdez* compels reversal. In *Valdez*, this court concluded that the district court had erred because it determined the intended loss was the amount fraudulently billed to Medicare without considering an undercover audio recording of the defendant's employee that strongly indicated the defendant was aware that Medicare would pay only a fraction of what he claimed.[26] However, in *United States v. Usman*, when no witness testified at trial about the defendant's knowledge of Medicare's reimbursement schedule, the defendant relied on third parties for billing, and the defendant testified at trial that "he did not know the rules of Medicare/Medicaid billing," there was no clear error when the district court

---

[25] *Id.* (quoting *Isiwele*, 635 F.3d at 203).

[26] *Id.*

found the amount fraudulently claimed was the intended loss even though the defendant averred at sentencing to have been "abundantly aware" of the reimbursement formula.[27]

The district court likened the present case to *Usman*, and we are inclined to agree. While Elliott points to certain trial evidence that would have allowed the district court to infer Elliott's knowledge of Medicare's reimbursement schedule, such as Double Daniels's contracts setting obligations to third parties based on payments received from Medicare, we are not left with a definite and firm conviction that the district court erred. This evidence does not directly contradict the district court's finding as the evidence in *Valdez* did. Furthermore, unlike in *Valdez*, in which the district court ignored the defendant's evidence rebutting the prima facie case established by the amount fraudulently billed,[28] the district court here explicitly gave weight to the evidence, including Elliott's affidavit about his knowledge of Medicare billing practices. Whereas the district court in *Valdez* erred by failing to consider a pre-trial statement captured in an undercover recording,[29] the district court in the present case expressly found that Elliott's "self-serving affidavit after the fact . . . is not persuasive."

Because the district court's determination of Elliott's subjective intent was not clearly erroneous, the imposition of the sentence enhancement was not improper.

*        *        *

---

[27] *United States v. Usman*, 460 F. App'x. 414, 417 (5th Cir. 2012).

[28] *Valdez*, 726 F.3d at 696 ("[W]e find that it was error for the district court to calculate the intended loss without considering the evidence in the record that rebutted the prima facie evidence of intended loss.").

[29] *Id.*

No. 13-20560

For the foregoing reasons, the judgment of the district court is AFFIRMED.