NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

SCOTT ABRAHAM GROOM,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13288
Trial Court No. 3AN-13-05483 CR

O P I N I O N

No. 2777 — May 31, 2024

Appeal from the Superior Court, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge HARBISON, writing for the Court.
Judge WOLLENBERG, dissenting.

Scott Abraham Groom was convicted of one count of scheme to defraud and was ordered to pay $259,881.12 in restitution.[1] On appeal, Groom contends that the restitution order was issued in violation of his right to a jury trial under both the Sixth Amendment to the United States Constitution and Article I, Section 11 of the Alaska Constitution.[2] According to Groom, these constitutional provisions prevent a court from relying on any facts not proven to a jury beyond a reasonable doubt when the court issues a restitution order in a criminal case. Groom also contends that the superior court erred by assigning him responsibility for the full amount of restitution while limiting his co-defendant's restitution liability to the amount specified in her cooperation agreement with the State. For the reasons explained in this opinion, we reject Groom's claims of error and affirm the superior court's restitution order.

*Background facts and proceedings*

Groom was convicted of engaging in conduct constituting a scheme to obtain over $10,000 in state funds by "false or fraudulent pretense, representation, or promise" and obtaining funds in accordance with this scheme.[3] To prove its case at trial, the State presented evidence that Groom and his co-defendant, Laurayne Fischer, submitted false claims to the Alaska Division of Risk Management (the Division) requesting reimbursement for medical treatment Fischer purportedly provided to Groom.

---

[1] AS 11.46.600(a)(2).

[2] Groom also appealed his conviction, but we bifurcated the issues for decision. Today's opinion resolves the issues relating to the superior court's restitution order. We previously issued an opinion affirming Groom's conviction. *Groom v. State*, 2023 WL 177486 (Alaska App. Jan. 11, 2023) (unpublished).

[3] *See* AS 11.46.600(a)(2).

Groom had been entitled, under a workers' compensation settlement agreement, to be reimbursed by the Division for the cost of certain medical treatment. Over a period of approximately two and a half years, Fischer filled out medical claim forms stating that she had provided treatment to Groom that she had not, in fact, provided. Groom faxed the claim forms to the Division, and the Division paid Fischer as requested. Fischer and Groom then shared the reimbursement proceeds.

The State filed criminal charges against Fischer and Groom for this conduct, and a grand jury returned an indictment charging Fischer and Groom with multiple felony offenses.

Prior to Groom's trial, Fischer entered into a comprehensive cooperation and plea agreement with the State. Fischer agreed to plead guilty to a single consolidated count of second-degree theft and to accept joint and several liability with Groom for $20,391.46 in restitution. As part of the deal, she also agreed to testify against Groom at trial. Under the terms of the agreement, Fischer's liability was capped at the agreed upon restitution amount, "even if . . . Groom [was] found liable for a larger amount of restitution by a State of Alaska Superior Court."

Groom's case proceeded to trial, and the jury found Groom guilty of all but one count of the indictment. Groom contested the award of restitution, arguing that the evidence was unreliable and insufficient to support the State's request, and that any restitution against Groom should be limited to the amount Fischer was ordered to pay pursuant to her plea agreement. But after reviewing the evidence presented at trial, the court rejected Groom's arguments. It determined that the Division suffered a loss of $259,881.12 as the result of Groom's criminal conduct, and it issued a restitution judgment for that amount. This appeal followed.

*Groom's argument that the superior court's restitution order violated his constitutional right to a criminal jury trial under the Sixth Amendment*

Under Alaska law, restitution is determined by the trial court.[4]  Alaska Statute 12.55.045 mandates that courts "shall, when presented with credible evidence, . . . order a defendant convicted of an offense to make restitution."  Our case law makes clear that the amount of restitution should reflect the actual damages proximately caused by the conduct for which the defendant was convicted.[5]

On appeal, Groom does not argue that there was insufficient evidence to support the superior court's award of restitution in the amount of $259,881.12 or that the superior court erred in how it came to this amount.  Instead, Groom claims that the restitution judgment was issued in violation of his right to have a jury, rather than the court, determine the amount of restitution.

Groom's argument is primarily based on decisions of the United States Supreme Court interpreting the Sixth Amendment of the United States Constitution.[6] The Sixth Amendment provides that, in "all criminal prosecutions, the accused shall

---

[4]    *Skupa v. State*, 520 P.3d 1184, 1186 (Alaska App. 2022); *see* AS 12.55.045(a).

[5]    *Noffsinger v. State*, 850 P.2d 647, 650 (Alaska App. 1993); *Peterson v. Anchorage*, 500 P.3d 314, 319 (Alaska App. 2021) ("[T]he damages for which restitution is ordered must be caused by the criminal conduct for which the defendant was convicted, not additional uncharged conduct.").

[6]    Groom's opening brief mentions Article I, Section 16 of the Alaska Constitution, which preserves the right to a jury trial in civil cases where the amount in controversy exceeds $250 "to the same extent as it existed at common law."  But Groom does not assert that Alaska's statutory restitution scheme or the specific restitution judgment in this case violates this constitutional provision, and we accordingly do not decide that question in this case. *Cf. State v. Arnett*, 496 P.3d 928, 931, 936-38 (Kan. 2021) (invalidating portions of Kansas criminal restitution statutes because they infringed on a defendant's right to a civil jury trial).

enjoy the right to a speedy and public trial, by an impartial jury." In its landmark decision in *Apprendi v. New Jersey*, the Supreme Court explained that the right to a jury trial is not limited to adjudicating a defendant's guilt but extends to a determination of any fact that increases the penalty for a crime beyond the prescribed statutory maximum (other than the fact of a prior conviction).[7] In other words, the defendant has the right to a jury determination of all the facts that the law makes essential to determining the parameters of the potential punishment.

Four years later, the Supreme Court held in *Blakely v. Washington* that the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but rather is the maximum sentence the judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.[8] And more recently, the Court held that any fact that increases a mandatory *minimum* penalty must also be submitted to a jury and proved beyond a reasonable doubt.[9]

Relying on these cases, Groom argues that the facts relied on by a court to determine the appropriate restitution award must be found by a jury beyond a reasonable doubt. He contends that, in this case, the court was not authorized to award *any* restitution because determining the amount of the Division's losses required factual findings beyond those necessary to adjudicate his guilt, and that these findings must be made by a jury rather than by the judge.

We previously considered the question of whether the *Apprendi* line of cases applies to restitution orders in two separate cases — an unpublished memorandum

---

[7]   *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

[8]   *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004).

[9]   *Alleyne v. United States*, 570 U.S. 99, 102, 114-15 (2013).

decision, *Her v. State*,[10] and more recently, a published opinion, *Skupa v. State*.[11] But we did not definitively answer the question in either case.

In *Her*, we noted that the overwhelming authority had determined that the *Apprendi* line of cases did not apply to restitution orders.[12] But we acknowledged that some legal commentators and two Supreme Court justices appeared to believe that *Apprendi* and its progeny require the facts supporting a restitution award to be submitted to a jury.[13] Ultimately, we concluded that we did not need to decide this question of law because, even if the Sixth Amendment right to a jury trial applies to the restitution determination, the absence of a jury finding was harmless beyond a reasonable doubt under the facts of that case.[14]

In *Skupa*, we also declined to answer this legal question.[15] Skupa was convicted pursuant to a plea agreement.[16] As required by the plea agreement, Skupa

---

[10] *Her v. State*, 2019 WL 3318138, at *3-5 (Alaska App. July 24, 2019) (unpublished).

[11] *Skupa v. State*, 520 P.3d 1184, 1186-91 (Alaska App. 2022).

[12] *Her*, 2019 WL 3318138, at *4.

[13] *Id.*; *see also Hester v. United States*, 139 S. Ct. 509, 509-11 (2019) (Gorsuch, J., dissenting); James M. Bertucci, *Apprendi-Land Opens its Borders: Will the Supreme Court's Decision in Southern Union Co. v. United States Extend Apprendi's Reach to Restitution?*, 58 St. Louis U. L.J. 565, 587-88 (2014). Despite the dissent in *Hester*, the Supreme Court has continued rejecting petitions for certiorari in cases addressing *Apprendi* and restitution. *See, e.g.*, *Arnett v. Kansas*, 142 S.Ct. 2868 (2022) (denying certiorari in a case in which the Kansas Supreme Court refused to find a Sixth Amendment jury trial right to determine restitution).

[14] *Her*, 2019 WL 3318138, at *3-5.

[15] *Skupa*, 520 P.3d at 1190.

[16] *Id.* at 1186.

entered a guilty plea to the charge of first-degree theft and agreed to pay restitution.[17] After conducting a restitution hearing, the court ordered her to pay $415,554.61 in restitution.[18] For the first time on appeal, Skupa claimed that the superior court was not authorized to award more than $25,000 in restitution because she had only admitted to stealing "$25,000 or more" when she pleaded guilty.[19] Skupa claimed it was plain error for the superior court to have failed to recognize that the restitution order was issued in violation of her Sixth Amendment right to a jury trial.[20]

But when Skupa entered into her plea agreement, she waived her Sixth Amendment right to a jury trial.[21] Even assuming Skupa could argue that her guilty plea was not knowing and voluntary because she was unaware that she was waiving a right to a jury determination of restitution — a right that no court had recognized — she was not attempting to withdraw her plea. Instead, Skupa sought to maintain the benefits of her plea agreement while demanding a jury trial on the amount of restitution. Because the law does not permit this approach, we rejected Skupa's claim of plain error.[22]

Like Skupa, Groom did not demand a jury trial on the question of restitution and instead asserts on appeal that the superior court's failure to conduct a jury trial was plain error. But unlike Skupa, Groom was not convicted as part of a comprehensive plea agreement. This case thus requires us to resolve the question we left unanswered in *Skupa* and *Her*: whether a criminal defendant has the right under the

[17] *Id.*

[18] *Id.*

[19] *Id.* at 1188; *see also* AS 11.46.120(a).

[20] *Skupa*, 520 P.3d at 1188.

[21] *Id.* at 1190.

[22] *Id.* at 1190-91.

Sixth Amendment to have a jury — rather than the court — determine the amount of restitution.

As we noted in *Skupa*, "Every court to address this legal issue — at least fifteen state courts and eleven federal circuit courts — has held that the *Apprendi* line of cases does not apply to indeterminate restitution statutes."[23] Courts that have decided this issue have generally followed one of two analytical paths to reach the conclusion

---

[23] *Id.* at 1188-89; *see, e.g.*, *United States v. Vega-Martínez*, 949 F.3d 43, 54-55 (1st Cir. 2020); *United States v. Bengis*, 783 F.3d 407, 412-13 (2d Cir. 2015); *United States v. Leahy*, 438 F.3d 328, 337-38 (3d Cir. 2006); *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012); *United States v. Rosbottom*, 763 F.3d 408, 420 (5th Cir. 2014); *United States v. Churn*, 800 F.3d 768, 781-82 (6th Cir. 2015); *United States v. Wolfe*, 701 F.3d 1206, 1216-18 (7th Cir. 2012); *United States v. Thunderhawk*, 799 F.3d 1203, 1209 (8th Cir. 2015); *United States v. Green*, 722 F.3d 1146, 1148-51 (9th Cir. 2013); *United States v. Burns*, 800 F.3d 1258, 1261-62 (10th Cir. 2015); *United States v. Kachkar*, 2022 WL 2704358, at *10 (11th Cir. July 12, 2022) (unpublished) (citing *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006)); *State v. Leon*, 381 P.3d 286, 289 (Ariz. App. 2016); *People v. Chhoun*, 480 P.3d 550, 590 (Cal. 2021); *People v. Knapp*, 487 P.3d 1243, 1260 (Colo. App. 2020); *State v. Foumai*, 2018 WL 495679, at *4 (Haw. App. Jan. 22, 2018) (unpublished); *Smith v. State*, 990 N.E.2d 517, 521-22 (Ind. App. 2013); *State v. Arnett*, 496 P.3d 928, 933-34 (Kan. 2021), *cert. denied*, 142 S. Ct. 2868 (2022); *Commonwealth v. Denehy*, 2 N.E.3d 161, 174-75 (Mass. 2014); *People v. Corbin*, 880 N.W.2d 2, 14 (Mich. App. 2015); *State v. Field*, 116 P.3d 813, 817 (Mont. 2005); *State v. Clapper*, 732 N.W.2d 657, 663-64 (Neb. 2007); *State v. Martinez*, 920 A.2d 715, 721-22 (N.J. App. 2007); *People v. Horne*, 767 N.E.2d 132, 139 (N.Y. 2002); *State v. Deslaurier*, 371 P.3d 505, 509 (Or. App. 2016); *State v. White*, 2004 WL 2326708, at *24 (Tenn. Crim. App. Oct. 15, 2004) (unpublished); *State v. Kinneman*, 119 P.3d 350, 355 (Wash. 2005); *see also State v. Davison*, 973 N.W.2d 276, 286-88 (Iowa 2022) (applying *Apprendi* to a specific provision of Iowa law that mandates a $150,000 minimum restitution award when a defendant's crime "caused the death of another" and holding that jury must have found that defendant "caused the death of another" but distinguishing this statute from Iowa's general restitution scheme, which is otherwise indeterminate and limited to pecuniary damages); *State v. Rey*, 905 N.W.2d 490, 497 (Minn. 2018) (concluding that modest mandatory-minimum-restitution requirement was not an unconstitutional fine, and therefore refusing to reach defendant's *Alleyne* and *Blakely* argument).

that restitution findings may be made by a judge rather than a jury.[24] One group of courts has concluded that, for purposes of the Sixth Amendment, criminal restitution is not punishment, while the other group has concluded that *Apprendi* and its progeny do not apply because indeterminate restitution statutes do not specify a maximum award.[25]

The first of these analytical paths is inconsistent with Alaska's well-established case law explaining that one purpose for restitution is punishment.[26] Under Alaska law, restitution is a "hybrid remedy" with both punitive and remedial aspects.[27] A restitution order is intended to compensate the victim for their actual damages or loss, and it is also intended to be part of the defendant's sentence and a condition of any probation or suspended sentence.[28] In this manner, "restitution serves two goals: not only restoring victims, but also making defendants pay the expenses they have caused by their criminal conduct."[29]

The punitive aspect of a restitution order is clearly reflected in the statute that sets out the consequences of a defendant's willful failure to pay restitution.[30] This statute permits such a defendant to be imprisoned and to receive "[c]redit . . . toward

---

[24] *Arnett*, 496 P.3d at 933.

[25] *Id.*

[26] *See, e.g.*, *Ortiz v. State*, 173 P.3d 430, 431-33 (Alaska App. 2007) (explaining that restitution is sufficiently punitive to implicate *ex post facto* clause); *Reyes v. State*, 978 P.2d 635, 637-41 (Alaska App. 1999) (discussing how restitution is sufficiently punitive to implicate double jeopardy clause).

[27] *Ortiz*, 173 P.3d at 432-33.

[28] AS 12.55.045(a), (i).

[29] *Mahan v. State*, 51 P.3d 962, 969 (Alaska App. 2002).

[30] *See* AS 12.55.051.

satisfaction of the [restitution] order . . . for every day [the defendant] is incarcerated for nonpayment."[31]  As this Court has noted, this statute undermines the restorative purpose of restitution while promoting its punitive purpose:  "A victim is not compensated by having the defendant spend time in jail.  In fact, because the defendant must receive credit for every day spent in jail, the very opposite occurs:  the victim actually *loses* compensation when the defendant is imprisoned for willful non-payment of the restitution obligation."[32]   Indeed, because of the punitive nature of restitution under Alaska law, this Court has explained that a restitution obligation is sufficiently penal to trigger the protections of the *ex post facto* clause and also that restitution awards are "punishment" for double jeopardy purposes.[33]

Given this well-established case law, we decline to follow the reasoning of those courts that have held that restitution does not offend *Apprendi* because it is primarily intended to compensate the victim and should therefore not be considered criminal punishment.  Instead, we conclude that, under Alaska law, restitution awards must be considered punishment for purposes of the Sixth Amendment.

We next consider the second analytical path that courts have followed when evaluating whether a restitution determination must be made by a jury — reasoning that *Apprendi* does not apply because indeterminate restitution statutes authorize courts to impose the actual damages resulting from the defendant's crime as a consequence of the conviction itself and do not set out a maximum amount that may be imposed.  This group of courts has noted that, unlike statutes setting out maximum fines or terms of incarceration, indeterminate restitution statutes permit a restitution award up to the total

---

[31]  AS 12.55.051(a).

[32]  *Ortiz*, 173 P.3d at 433.

[33]  *Id.*; *Reyes v. State*, 978 P.2d 635, 637-41 (Alaska App. 1999).

amount of the victim's loss and do not have prescribed maximums. Thus, these courts reason that a judicial investigation into the extent of the victim's damages "does not *increase* the statutory maximum or mandatory minimum, it merely *determines* the appropriate restitution within the indeterminate range already authorized by the jury's finding of guilt."[34]

In this sense, when a sentencing judge makes findings to determine the appropriate amount of restitution, the process is analogous to that a judge undertakes when determining the appropriate term of imprisonment within an authorized indeterminate sentencing range. In the context of determining the term of imprisonment, once the defendant has been convicted, "no further fact-finding is necessary to invest the sentencing judge with the *authority* to impose any sentence within this range."[35] As this Court explained in *Carlson v. State*, such judicial fact-finding does not implicate the

---

[34] *Skupa v. State*, 520 P.3d 1184, 1189 (Alaska App. 2022)*; see also United States v. Burns*, 800 F.3d 1258, 1261-62 (10th Cir. 2015) (rejecting defendant's argument that the *Apprendi* line of cases applied to restitution because sentencing courts order restitution to compensate victims for their losses and therefore there is no statutory maximum amount of restitution that a sentencing court can exceed); *United States v. Milkiewicz*, 470 F.3d 390, 404 (1st Cir. 2006) ("[T]he jury's finding of guilt leads to only one outcome; in *every* case in which such punishment is imposed, 'the jury's verdict automatically triggers restitution in the "full amount of each victim's losses[.]"'" (quoting *United States v. Leahy*, 438 F.3d 328, 338 n.11 (3d Cir. 2006))); *State v. Deslaurier*, 371 P.3d 505, 509 (Or. App. 2016) ("Restitution in the full amount of the victim's economic damages does not exceed the 'prescribed statutory maximum' because restitution for the full amount of the victim's economic damages is the only 'restitution outcome that is consistent with a jury's verdict.' The jury found that defendant committed the crime and, in doing so, found that defendant was liable for the full amount of the victim's economic damages.").

[35] *Carlson v. State*, 128 P.3d 197, 209 (Alaska App. 2006) (emphasis added).

constitutional concern at issue in the *Apprendi* line of cases.[36]  This is because the trial court's additional fact-finding is "not done to establish the judge's legal authority to impose the selected sentence" (because the judge is already invested by statute with the authority to sentence a defendant within the indeterminate range).[37]  "Rather, this fact-finding is done to explain . . . why the judge exercised their sentencing discretion in a particular manner."[38]

The same is true when the court determines the appropriate amount of restitution.  Once a defendant has been convicted, no further fact-finding is necessary to vest the sentencing court with the legal authority to impose the established restitution amount (because the judge is already authorized to enter a restitution award that compensates the victim for the losses proximately caused by the defendant's criminal conduct).  Instead, the court's additional fact-finding is done to explain the court's accounting — *i.e.*, how it determined the amount of restitution the defendant must pay.  Thus, as we explained in *Skupa*, Alaska's restitution statutes place defendants "on notice that their criminal conduct, if proved in a jury trial, could lead to an indeterminate award of restitution as needed to compensate the victim for pecuniary losses."[39]

For these reasons, we join the majority of courts in holding that indeterminate restitution statutes like Alaska's permit a restitution award up to the total amount of the victim's loss and do not have statutory maximums.  We thus conclude that the trial court did not run afoul of the Sixth Amendment when it found that Groom

---

[36]  *Id.*

[37]  *Id.*

[38]  *Id.*

[39]  *Skupa*, 520 P.3d at 1190 (quoting *State v. Davison*, 973 N.W.2d 276, 286 (Iowa 2022)).

defrauded the Division in the amount of $259,881.12, rather than submitting this issue to a jury.

> *Groom's argument that the superior court's restitution order violated his right to a criminal jury trial under the Alaska Constitution*

Groom next contends that the right to a have a jury determine the amount of restitution is required by Article I, Section 11 of the Alaska Constitution.

"When a defendant asserts that the Alaska Constitution affords greater protection than the corresponding provision of the Federal Constitution, it is the defendant's burden to demonstrate something in the text, context, or history of the Alaska Constitution that justifies this divergent interpretation."[40] As support for his position, Groom relies on the text of Article I, Section 11 of the Alaska Constitution, which provides that "[i]n all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury." Groom also claims that his position is supported by the Alaska Supreme Court's opinion in *Baker v. Fairbanks* — which recognized Alaska's jury trial right can be broader than that provided by the Sixth Amendment — and by subsequent cases employing *Baker*'s reasoning to expand the right to a jury trial in Alaska.[41]

In *Baker*, the supreme court held that "in any criminal prosecution, whether under state law or for violation of a city ordinance, the accused upon demand is entitled to a jury trial."[42] The court defined the "category of 'criminal' prosecutions" broadly to include: offenses for which incarceration is a "direct penalty," offenses which may result

---

[40] *State v. Zerkel*, 900 P.2d 744, 758 n.8 (Alaska App. 1995).

[41] *Baker v. Fairbanks*, 471 P.2d 386, 401-02 (Alaska 1970).

[42] *Id.* at 401.

in the loss of a valuable license, and offenses which — even without the possibility of incarceration — "still connote criminal conduct in the traditional sense of the term."[43] The court noted that "[a] heavy enough fine might also indicate criminality because it can be taken as a gauge of the ethical and social judgments of the community."[44] In so doing, the supreme court recognized that it was extending Alaska's constitutional jury trial right beyond the scope of its federal counterpart.

Since *Baker*, the right to a jury trial has been further extended to criminal contempt proceedings,[45] to some civil contempt proceedings (given the punitive as well as remedial elements invariably included in such cases),[46] and to minor consuming alcohol cases punishable by a mandatory period of probation.[47] Groom relies on this line of cases to argue that restitution likewise triggers the right to a jury trial pursuant to the Alaska Constitution. To demonstrate that restitution connotes criminal conduct, Groom points to the potential size of restitution awards, the possibility of incarceration in the case of willful non-payment, and the fact that they are court-ordered in a criminal case.

But the reasoning of *Baker* and its progeny is not applicable to the question presented in this case. Instead, *Baker* governs the initial question of whether a defendant is entitled to have a jury, rather than a court, adjudicate their guilt. Under *Baker*, courts must look to the ramifications of the possible punishment to answer this question. If the punishment is serious enough, then the offense falls into the "category of 'criminal'

---

[43]   *Id.* at 402.

[44]   *Id.* at 402 n.29.

[45]   *State v. Browder*, 486 P.2d 486 P.2d 925, 937 (Alaska 1971).

[46]   *Gwynn v. Gwynn*, 530 P.2d 1311, 1312-13 (Alaska 1975); *Johansen v. State*, 491 P.2d 759, 767 (Alaska 1971).

[47]   *State v. Auliye*, 57 P.3d 711, 718 (Alaska App. 2002).

prosecution," and the defendant is given the right to have a jury adjudicate the question of guilt.

In the present case, there is no dispute that Groom was charged with a criminal offense and that, as a result, he had the right to have a jury determine whether he was guilty of the charged offenses. (In fact, Groom exercised this right, and it was a jury, rather than the court, that found him guilty of scheme to defraud.) Instead, the question presented in this case is whether Groom's sentence (specifically, the restitution portion of his sentence) was predicated on facts that should have been found by a jury, rather than a judge. The reasoning of *Baker* does not apply to this determination; instead, as we have explained, Alaska law allows for judges to impose sentences within an indeterminate range of allowable sentences.[48]

Because Groom has failed to identify something in the text, context, or history of the Alaska Constitution that would indicate Alaska's constitutional criminal jury trial right is more expansive than its federal counterpart in the *Apprendi* context, we reject Groom's state constitutional claims.

*Groom's argument that the superior court order unlawfully exceeded the amount of damages proportional to his fault*

Groom's final argument is that the superior court erred by assigning him liability for the entirety of the losses proximately caused by his crimes, even though his co-defendant, Laurayne Fischer, was ordered to reimburse the Division for only part of the losses. Relying primarily on a discussion of the role of joint and several liability and comparative fault in the civil context, Groom argues that the court should have

---

[48] *See Carlson v. State*, 128 P.3d 197, 209 (Alaska App. 2006).

apportioned liability, ordering him to pay restitution only in an amount that was equal to his share of the fault.

But in *Noffsinger v. State*, this Court upheld the superior court's ruling that a defendant and his accomplice were jointly and severally liable for restitution, over the defendant's assertion that the court should apportion their liability for theft of property.[49] We noted that, unlike civil damages, criminal restitution awards are limited to actual damages and may be imposed only when a defendant has acted with a culpable mental state so far beyond ordinary negligence as to warrant a criminal sanction.[50] We concluded that there was no realistic argument in *Noffsinger* that the defendant was only partially at fault, or had caused only a limited portion of the loss.[51] For the same reason, we reject Groom's contention that the superior court should not have required him to reimburse the Division for the full amount of its losses.[52]

---

[49] *Noffsinger v. State*, 850 P.2d 647, 650-51 (Alaska App. 1993).

[50] *Id.*; *see also Peterson v. Anchorage*, 500 P.3d 314, 324 (Alaska App. 2021) (explaining that a civil defendant is entitled to substantive protections, including the ability to argue comparative fault, that are generally not available in a criminal restitution hearing); *Thompson v. State*, 64 P.3d 132, 134 (Alaska App. 2003) (noting that, although Alaska law no longer imposes joint and several liability when two or more civil defendants are found to be joint tortfeasors, joint and several liability is still available in criminal cases when a sentencing court imposes restitution on two or more accomplices).

[51] *Noffsinger*, 850 P.2d at 651.

[52] The restitution judgment in this case states that Groom and Fischer are jointly and severally liable for $20,391.46 (the amount set out in Fischer's cooperation agreement) but that Groom alone is liable for $239,489.66 (the restitution that exceeds the amount set out in the cooperation agreement). On appeal, Groom contends that the trial court's restitution order may be read to foreclose him from "any recourse in contribution from Fischer." But the restitution judgment says nothing about Fischer's liability to Groom for contribution. And AS 12.55.045(b) clearly provides that an order of restitution "does not limit any civil

(continued...)

*Conclusion*

The superior court's restitution judgment is AFFIRMED.

---

[52] (...continued)
liability of the defendant arising from the defendant's conduct." We thus do not construe the restitution order as barring Groom from seeking contribution from Fischer in a civil action.

– 17 –                                                    2777

Judge WOLLENBERG, dissenting.

The Sixth Amendment to the United States Constitution provides that, in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" Article I, Section 11 of the Alaska Constitution sets out a similar requirement.[1] I would hold that these provisions require that criminal restitution be determined by a jury. I therefore dissent.

In *Apprendi v. New Jersey*, the Supreme Court held that, under the Sixth Amendment, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum," other than the fact of a prior conviction, "must be submitted to a jury, and proved beyond a reasonable doubt."[2] Two years later, in *Ring v. Arizona*, the Court — relying on *Apprendi* — reiterated that any fact that increases the scope of the defendant's punishment is subject to this requirement: "If a State makes an increase in a defendant's punishment contingent on the finding of a fact, that fact — *no matter how the State labels it* — must be found by a jury beyond a reasonable doubt."[3]

---

[1]  Article I, Section 11 provides, in relevant part:  "In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record."

[2]  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  Facts admitted by the defendant are also outside the scope of the *Apprendi* rule.  *See Blakely v. Washington*, 542 U.S. 296, 303 (2004).

[3]  *Ring v. Arizona,* 536 U.S. 584, 602 (2002) (emphasis added) (citing *Apprendi*, 530 U.S. at 482-83).

The Supreme Court has since applied this same reasoning to presumptive sentencing schemes (*Blakely v. Washington*),[4] criminal fines (*Southern Union Co. v. United States*),[5] and mandatory minimum sentences (*Alleyne v. United States*).[6] Pre-*Apprendi* case law in Alaska similarly held that facts that increase the maximum sentence for a crime had to be proved to a jury.[7]

In applying *Apprendi* to presumptive sentencing schemes, the Supreme Court stated in *Blakely* that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."[8] "In other words, the relevant 'statutory

---

[4]    *Blakely*, 542 U.S. at 303 (holding that the phrase "statutory maximum," for purposes of *Apprendi*, refers to "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*").

[5]    *Southern Union Co. v. United States*, 567 U.S. 343, 360 (2012) (holding that *Apprendi* applies to criminal fines).

[6]    *Alleyne v. United States*, 570 U.S. 99, 115-16 (2013) (holding that any fact that increases a mandatory *minimum* penalty must be submitted to a jury and proved beyond a reasonable doubt).

[7]    *Donlun v. State*, 527 P.2d 472, 473-74 (Alaska 1974) (holding that, where a criminal statute provides for enhanced ranges of punishment for aggravated instances of the proscribed offense, the aggravating facts must be set out in the indictment or charging document and proven at trial before the defendant can be exposed to an increased range of punishment). *But see Huf v. State*, 675 P.2d 268, 271-73 (Alaska App. 1984) (declining to apply this rule to Alaska's presumptive sentencing scheme), *abrogated by Blakely*, 542 U.S. at 303.

[8]    *Blakely*, 542 U.S. at 303.

maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings."[9]

I would reach a similar conclusion in the restitution context. In the absence of any additional finding of facts, the amount of restitution authorized by a jury's verdict alone is generally zero (or, in the case of monetary crimes that have a minimum threshold finding of loss, the amount of loss necessarily found by the jury).[10] Thus, as Professor LaFave asserts, any additional fact-finding by a judge is precluded by *Apprendi* and *Alleyne*: "If a judge is prohibited from imposing *any* restitution at all without first finding some loss, or, if a judge *must* impose restitution upon finding loss," as in Alaska,[11] "a defendant under *Apprendi* and *Alleyne* should have the right to insist that the government prove that loss beyond a reasonable doubt to a jury."[12]

In the analogous context of criminal fines, the Supreme Court has expressly held that *Apprendi* limits judicial fact-finding.[13] In *Southern Union*, the defendant was charged with violating an environmental statute by storing liquid mercury without a

---

[9]   *Id.* at 303-04.

[10]   *See Southern Union*, 567 U.S. at 347, 352 (holding that any fine greater than $50,000 — the amount corresponding to the minimum finding of guilt made by the jury — violated *Apprendi*); *see, e.g.*, AS 11.46.130(a)(1) ("A person commits the crime of theft in the second degree if the person commits theft . . . and the value of the property or services is $750 or more but less than $25,000[.]").

[11]   *See* AS 12.55.045(a) ("The court *shall*, when presented with credible evidence, unless the victim or other person expressly declines restitution, order a defendant convicted of an offense to make restitution . . . to the victim or other person injured by the offense[.]" (emphasis added)).

[12]   6 Wayne R. LaFave et al., *Criminal Procedure* § 26.6(c), at 1073 (4th ed. 2015).

[13]   *Southern Union*, 567 U.S. at 352.

permit "[f]rom on or about September 19, 2002 until on or about October 19, 2004."[14] The jury instructions authorized the jury to find the defendant guilty even if the jury found that the defendant violated the statute for only a single day within that date range.[15] The jury subsequently found the defendant guilty.[16]  The relevant sentencing statute authorized a "fine of not more than $50,000 for each day of violation."[17]  At sentencing, the district court found — based on the content and context of the verdict — that the maximum potential fine was $38.1 million ($50,000 for each of the 762 days from September 19, 2002 to October 19, 2004), and imposed a $6 million fine (as well as a $12 million "community service obligation").[18]

The Supreme Court reversed the fine, concluding that "the rule of *Apprendi* applies to the imposition of criminal fines."[19]  The Court explained that there was no basis to treat fines differently from other forms of punishment and held that judicial fact-finding that enlarged a fine beyond that permitted by the jury's verdict violated *Apprendi*.[20]  The Court made clear that when the amount of a fine may only be determined by "reference to particular facts" — including the extent of "the victim's loss" — *Apprendi* requires that the facts essential to determining the maximum amount of the fine be found by a jury beyond a reasonable doubt:

---

[14]  *Id.* at 346 (alteration in original).

[15]  *Id.* at 347.

[16]  *Id.* at 346.

[17]  *Id.* at 347 (quoting 42 U.S.C. § 6928(d)).

[18]  *Id.*

[19]  *Id.* at 360.

[20]  *Id.* at 349, 352, 360.

[T]he amount of a fine, like the maximum term of imprisonment or eligibility for the death penalty, is often calculated by reference to particular facts. Sometimes, as here, the fact is the duration of a statutory violation; under other statutes it is the amount of the defendant's gain *or the victim's loss*, or some other factor. In *all* such cases, requiring juries to find beyond a reasonable doubt facts that determine the fine's maximum amount is necessary to implement *Apprendi*'s "animating principle": the "preservation of the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense."[21]

*Southern Union*, of course, was addressing fines, not restitution. But the only principled way to distinguish a fine from restitution is to conclude that a fine is a punishment and restitution is not (as some other courts have held).[22]

In today's opinion, the Court recognizes that restitution in Alaska has a "punitive aspect" and thus constitutes a penalty for purposes of *Apprendi*. I agree with this conclusion, which is derived directly from our case law. We have held that, while restitution clearly serves an important remedial purpose — to compensate a victim for the loss incurred — it is sufficiently punitive to implicate both the *ex post facto* and double jeopardy clauses.[23] And, as the majority notes, a defendant may be incarcerated

---

[21]   *Id.* at 349-50 (emphasis added) (citations omitted).

[22]   *See, e.g.*, *United States v. LaGrou Distrib. Sys., Inc.*, 466 F.3d 585, 593 (7th Cir. 2006) (explaining that the Seventh Circuit has repeatedly held that restitution is not a criminal penalty, but a "classic civil remedy"); *State v. Leon*, 381 P.3d 286, 289 (Ariz. App. 2016) ("In Arizona, the courts have uniformly concluded that restitution's primary purpose is not penal in nature.").

[23]   *See Ortiz v. State*, 173 P.3d 430, 431-33 (Alaska App. 2007); *Reyes v. State*, 978 P.2d 635, 637-41 (Alaska App. 1999); *see also Paroline v. United States*, 572 U.S. 434, 456

(continued...)

for failing to pay restitution, with each day of incarceration negating a portion of the restitution obligation.[24]

The majority nonetheless concludes that a jury trial is not required for restitution determinations, reasoning that the jury's verdict alone authorizes restitution in the full amount of a victim's losses, and thus, the additional judicial fact-finding that is necessary to determine the amount of restitution does not increase the statutory maximum sentence for purposes of *Apprendi*. In reaching its conclusion, the majority analogizes the determination of restitution to the process a judge undertakes when determining the appropriate term of imprisonment within an authorized indeterminate sentencing range.

But this is a flawed analogy. In *Carlson v. State*, which the majority cites in support of its reasoning, the jury's verdict for second-degree murder alone authorized the sentencing court to impose a sentence of up to 99 years.[25] The fact that a prior judicial decision, *Page v. State*,[26] set a benchmark range for first felony offenders convicted of second-degree murder — requiring the sentencing court to present a "sound

---

[23] (...continued)
(2014) (noting that, while "the primary goal of restitution is remedial or compensatory, . . . it also serves punitive purposes," which might be sufficient to bring restitution "within the purview of the Excessive Fines Clause").

Indeed, the majority of federal appellate courts have held that restitution is a "criminal remedy that serves a punitive and deterrent purpose." James M. Bertucci, *Apprendi*-Land *Opens its Borders: Will the Supreme Court's Decision in* Southern Union Co. v. United States *Extend* Apprendi's *Reach to Restitution?*, 58 St. Louis U. L.J. 565, 584 (2014).

[24] AS 12.55.051(a).

[25] *Carlson v. State*, 128 P.3d 197, 203-05 (Alaska App. 2006).

[26] *Page v. State*, 657 P.2d 850, 855 (Alaska App. 1993).

reason" for upwardly departing from that benchmark — did not raise the statutory maximum to which the defendant was already subject based on the jury's findings.[27]

In the restitution context, however, the maximum restitution amount is $0 (or the amount directly found by the jury) absent any further findings of fact. Judicial fact-finding regarding the extent of the victim's loss does not determine the appropriate amount of restitution *within* a particular range. Rather, this judicial fact-finding determines *what that range is* — *i.e.*, it determines the permissible maximum (and minimum). This is precisely what is forbidden by *Apprendi*.

As the Alaska Supreme Court recently recognized in *State v. Grubb*, prior to the enactment of Alaska's revised criminal code in 1978 (effective in 1980), Alaska's statutes contained only "a single reference to restitution: a provision that allowed a judge to require a defendant to pay restitution as a condition of probation."[28] The authority to impose a probation condition requiring restitution payments was understood as part of a judge's "wide range of discretion in sentencing," and such a condition was proper as long as there was "a reasonable and valid basis for its imposition."[29] If this were still Alaska's restitution scheme, I might agree with the majority that a judge who awards restitution is merely determining an appropriate amount within an indeterminate sentencing scheme.

But, as the supreme court also noted, "over the last fifty years the legislature has steadily expanded the rights of crime victims to obtain restitution."[30] Unless a victim

---

[27] *Carlson*, 128 P.3d at 204.

[28] *State v. Grubb*, 546 P.3d 586, 593 (Alaska 2024); *see also* former AS 12.55.100(a)(2) (pre-1980); SLA 1955, ch. 195, § 1.

[29] *Hagberg v. State*, 606 P.2d 385, 387 (Alaska 1980).

[30] *Grubb*, 546 P.3d at 595; *see also* Alaska Const. art. I, § 24 (providing that crime
(continued...)

or other person who suffered a loss expressly declines restitution, Alaska's restitution scheme requires a finding of the amount of damages or loss caused by a defendant's crime.[31] And this finding constitutes the maximum (and minimum) allowable restitution amount.

Our current restitution scheme, therefore, has less in common with the restitution scheme in early Alaska law and more in common with a fine that existed in early Alaska law. Prior to the enactment of the revised criminal code, the crime of embezzlement of public money was punishable, in part, "by a fine equal to twice the amount converted, loaned, or neglected or refused to be paid."[32] The criminal code specifically provided that "the amount of the money converted, loaned, or neglected or refused to be paid shall be ascertained by the verdict of the jury as near as may be."[33] It therefore appears that there is historical practice in Alaska for applying the principles of *Apprendi* and *Southern Union* to situations where punishment is calculated based on a

---

[30] (...continued)
victims have "the right to restitution from the accused").

[31] *See* AS 12.55.045(a); *Grubb*, 546 P.3d at 595 (describing the award of criminal restitution under AS 12.55.045(a) as "mandatory"). Alaska Statute 12.55.045(n) sets out the method for determining the value of property stolen or damaged, while subsection (o) defines "loss of income" for purposes of cases involving stolen property. AS 12.55.045(n)-(o); *see also* AS 12.55.100(a)(2)(B).

[32] Former AS 11.20.300 (pre-1980); *see also* ACLA § 65-5-63 (1949); CLA § 4807 (1933); CLA § 1928 (1913); Carter's Annotated Alaska Code, pt. I, § 48 (1900).

[33] Former AS 11.20.310 (pre-1980); *see also* ACLA § 65-5-64 (1949); CLA § 4808 (1933); CLA § 1929 (1913); Carter's Annotated Alaska Code, pt. I, § 49 (1900).

determination of the actual damages or loss of the victim, rather than viewing such punishments as part of an indeterminate sentencing scheme.[34]

Accordingly, while I acknowledge the significant consequences that would flow from requiring jury trials for restitution, I fail to see how the Court's ruling today that restitution can be found by a judge, instead of a jury, can be logically reconciled with *Apprendi* and its progeny.

Other dissenting judges and commentators have articulated this same view,[35] but the position has failed to gain traction among state and federal courts, and the

---

[34] *See Baker v. Fairbanks*, 471 P.2d 386, 400-01 (Alaska 1970) ("If, historically, jury trial had always been available on a broad basis in Alaska, it is only reasonable to conclude that the framers thought they were continuing an existing practice.").

[35] *See Hester v. United States*, 139 S. Ct. 509, 509-11 (2019) (Gorsuch, J., dissenting from denial of certiorari); *State v. Arnett*, 496 P.3d 928, 943 (Kan. 2021) (Standridge, J., dissenting) ("When viewed collectively, [the cases declining to extend *Apprendi* to restitution] may appear to provide overwhelming support for finding that *Apprendi* does not apply to restitution orders. However, when read individually, these cases fail to provide a consistent or clear rationale for why *Apprendi* should not apply to restitution."); *State v. Clapper*, 732 N.W.2d 657, 664 (Neb. 2007) (Connolly, J., dissenting) (asserting that Nebraska's restitution statute "is a criminal penalty," and thus, "allowing a sentencing court to order restitution without the defendant's admitting the facts or a jury's deciding the facts supporting restitution" violates *Blakely*); *United States v. Leahy*, 438 F.3d 328, 342 (3d Cir. 2006) (McKee, J., concurring in part and dissenting in part) ("[T]he question is whether the verdict '*alone*' allows the judge to impose restitution with no additional finding of fact. Obviously, it doesn't. Notwithstanding the jury's verdict, no restitution can be imposed absent a judicial determination of the amount of loss."); *United States v. Carruth*, 418 F.3d 900, 906 (8th Cir. 2005) (Bye, J., dissenting) ("Once we recognize restitution as being a 'criminal penalty' the proverbial *Apprendi* dominoes begin to fall. While many in the pre-*Blakely* world understandably subscribed to the notion *Apprendi* does not apply to restitution because restitution statutes do not prescribe a maximum amount, . . . this notion is no longer viable in the post-*Blakely* world which operates under a completely different understanding of the term prescribed statutory maximum."); Judge William M. Acker, Jr.,

(continued...)

United States Supreme Court has repeatedly denied petitions of certiorari to decide the issue.[36]

That said, two Supreme Court justices have expressed doubt about the failure by courts to extend the rule of *Apprendi* to restitution. In a dissent from the denial of certiorari in one case, Justice Gorsuch, joined by Justice Sotomayor, reiterated the principle set out in *Blakely* that "the term 'statutory maximum' . . . refer[s] to the harshest sentence the law allows a court to impose based on facts a jury has found or the defendant has admitted."[37] Accordingly, Justice Gorsuch said, "the statutory maximum for restitution is usually *zero,* because a court can't award *any* restitution without finding additional facts about the victim's loss."[38] Justice Gorsuch therefore reasoned: "[J]ust as a jury must find any facts necessary to authorize a steeper prison sentence or fine, it

---

[35]   (...continued)
*The Mandatory Victims Restitution Act is Unconstitutional. Will the Courts Say So After Southern Union v. United States*, 64 Ala. L. Rev. 803 (2013); James M. Bertucci, *Apprendi-Land Opens its Borders: Will the Supreme Court's Decision in Southern Union Co. v. United States Extend Apprendi's Reach to Restitution?*, 58 St. Louis U. L.J. 565 (2014); *see also* 6 Wayne R. LaFave, et al., *Criminal Procedure*, § 26.6(c), at 1073-74 nn.63-66 (4th ed. 2015); *United States v. Green*, 722 F.3d 1146, 1151 (9th Cir. 2013) ("Our precedents are clear that *Apprendi* doesn't apply to restitution, but that doesn't mean our caselaw's well-harmonized with *Southern Union*. Had *Southern Union* come down before our cases, those cases might have come out differently.").

[36]   *See, e.g.*, *Arnett*, 496 P.3d 928, *cert. denied*, 142 S. Ct. 2868 (2022); *Hester*, 139 S. Ct. at 509. The Supreme Court has said, however, that a denial of certiorari "carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review." *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 919 (1950).

[37]   *Hester*, 139 S. Ct. at 510 (Gorsuch, J., dissenting from denial of certiorari) (citing *Blakely v. Washington*, 542 U.S. 296, 303 (2004)).

[38]   *Id.*

would seem to follow that a jury must find any facts necessary to support a (nonzero) restitution order."[39]

Justice Gorsuch also stated that the Sixth Amendment was understood at the time of enactment "as preserving the 'historical role of the jury at common law,'" and that restitution awards at common law would have been predicated on specific factual findings by the jury.[40] Justice Gorsuch explained, specifically as to stolen goods:

> And as long ago as the time of Henry VIII, an English statute entitling victims to the restitution of stolen goods allowed courts to order the return only of those goods mentioned in the indictment and found stolen by a jury. 1 J. Chitty, Criminal Law 817-820 (2d ed. 1816); 1 M. Hale, Pleas of the Crown 545 (1736). In America, too, courts held that in prosecutions for larceny, the jury usually had to find the value of the stolen property before restitution to the victim could be ordered. See, *e.g.*, *Schoonover v. State*, 17 Ohio St. 294 (1867); *Jones v. State*, 13 Ala. 153 (1848); *State v. Somerville*, 21 Me. 20 (1842); *Commonwealth v. Smith*, 1 Mass. 245 (1804). See also Barta, Guarding the Rights of the Accused and Accuser: The Jury's Role in Awarding Criminal Restitution Under the Sixth Amendment, 51 Am. Crim. L. Rev. 463, 472-476 (2014). And it's hard to see why the right to a jury trial should mean less to the people today than it did to those at the time of the Sixth and Seventh Amendments' adoption.[41]

---

[39] *Id.*

[40] *Id.* at 511 (quoting *Southern Union. Co. v. United States*, 567 U.S. 343, 353 (2012)).

[41] *Id.* at 511. Interestingly, a section of the Carter Code, the first codification of Alaska law in 1900, provided, "That when an indictment charges an offense against property by larceny, embezzlement, or obtaining by false pretenses, the jury, on conviction, shall ascertain and declare in the verdict the value of the property stolen, embezzled, or falsely obtained." Carter's Annotated Alaska Code, pt. II, § 141 (1900). According to annotations

(continued...)

Finally, Justice Gorsuch observed that if restitution was truly "beyond the reach of the Sixth Amendment's protections in *criminal* prosecutions," then "the Seventh Amendment and its independent protection of the right to a jury trial in *civil* cases" would seemingly apply.[42]

Although the Seventh Amendment right to a civil jury trial has never been incorporated against the states,[43] the Alaska Constitution entitles a person to a jury trial to the same extent as it existed at common law "in civil cases where the amount in controversy exceeds two hundred fifty dollars."[44]  And AS 12.55.045(*l*) provides that a criminal restitution judgment in Alaska "is a civil judgment for the amount of the restitution."  If the right to a jury trial in *criminal* cases does not apply to restitution, then the right to a jury trial in *civil* cases would seemingly be implicated by this provision.[45]

---

[41]   (...continued)
in the Carter Code, this section was taken from an Ohio statute that was passed in the wake of *Schoonover v. State* — one of the cases Justice Gorsuch cites in his historical analysis of the Sixth Amendment.  *Schoonover v. State*, 17 Ohio St. 294, 298 (Ohio 1867) ("But in order to award the restitution which the statute authorizes, in twofold the value of the property stolen, the actual value of the property becomes material, and unless such value be found in the verdict, the judgment of restitution can not be rendered."); *see also Armstrong v. State*, 21 Ohio St. 357, 360 (Ohio 1871) (noting that the Ohio statute was passed after *Schoonover*). This section of the Carter Code ultimately became former Alaska Criminal Rule 31(e)(1) (pre-1993).  *See also* ACLA § 66-13-72 (1949); CLA § 5340 (1933); CLA § 2250 (1913). This rule provision was rescinded by SCO 1114 (dated Oct. 23, 1992; effective Jan. 15, 1993) after this Court noted that it "seem[ed] to be a relatively obscure rule not commonly used in practice."  *Salvato v. State*, 814 P.2d 741, 743 (Alaska App. 1991).

[42]   *Hester*, 139 S. Ct. at 511 (Gorsuch, J., dissenting from denial of certiorari).

[43]   *See Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 219 (1916).

[44]   Alaska Const. art. I, § 16.

[45]   *See State v. Arnett*, 496 P.3d 928, 933, 937-38 (Kan. 2021) (rejecting the notion that
(continued...)

– 29 –                                                                                                    2777

It is difficult to see why a criminal defendant would not be entitled to a jury trial under one right or the other.[46]

---

[45] (...continued)
restitution orders based on judicial fact-finding violate the Sixth Amendment but explaining that "[b]y allowing the judge to determine the legal damages proximately caused by the crime, rather than a jury, and then converting that determination into a civil judgment for the victim, the statutory scheme bypasses the traditional function of the jury to determine civil damages" and thus declaring unconstitutional the portion of the state's restitution statute requiring an order of restitution to be enforced as a civil judgment).

[46] As one dissenting judge in a Kansas case noted, restitution has been viewed as something of a "Goldilocks remedy — not too punitive to trigger the Sixth Amendment, not too compensatory to trigger [the civil jury trial right]." *State v. Robison*, 469 P.3d 83, 101 (Kan. App. 2020) (Leben, J., dissenting), *aff'd*, 496 P.3d 892 (Kan. 2021).

Some courts have suggested that restitution is, at heart, an equitable remedy and, therefore, outside the scope of the civil jury trial right. *See, e.g.*, *United States v. Fountain*, 768 F.2d 790, 801 (7th Cir. 1985) ("Restitution is frequently an equitable remedy, meaning, of course, that there is no right of jury trial."); *see also State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 423-24 (Alaska 1982) (recognizing that restitution was an equitable remedy at common law and therefore that there is no right to a jury in civil restitution cases under the Alaska Constitution). But this analysis appears to conflate civil restitution and criminal restitution. Civil restitution allows a plaintiff to recover a defendant's unjust gains, *Haines v. Comfort Keepers, Inc.*, 393 P.3d 422, 428-29 (Alaska 2017), while criminal restitution allows a victim to recover damages or loss caused by a defendant's crime. *Welsh v. State*, 314 P.3d 566, 568 (Alaska App. 2013). At common law, parties in civil actions for damages were entitled to a jury trial. *See Ross v. Bernhard*, 396 U.S. 531, 533 (1970) ("The Seventh Amendment, for example, entitled the parties to a jury trial in actions for damages to a person or property, for libel and slander, for recovery of land, and for conversion of personal property.").

I acknowledge that in *Grubb*, the Alaska Supreme Court stated that "[d]amages in civil suits are . . . not directly equivalent to damages available for criminal restitution" and that criminal restitution "may be available to a more expansive class than in civil litigation." *State v. Grubb*, 546 P.3d 586, 597 (Alaska 2024). The court also stated, in a footnote, that AS 12.55.045(*l*) was intended as "a 'procedural change in the enforcement mechanism for the judgment,'" and it "does not otherwise affect the purposes or features of criminal

(continued...)

The Alaska Supreme Court has recognized that "[t]here has always been a strong policy favoring jury trials in Alaska."[47] This policy "is bottomed on [the] belief that the right to jury trial holds a central position in the framework of American justice, and [the] further belief as to the primacy which must be accorded the accused's right to a fair trial against considerations of convenience or expediency to the state."[48]

Ultimately, the reluctance to extend *Apprendi* may be understandable as a matter of policy: it would mean upending restitution schemes across the country, much like *Apprendi* (and *Blakely*) upended sentencing schemes. But it does not make sense as a matter of legal principle; the logic of *Apprendi* cannot be squared with the judicial fact-finding underlying an award of restitution.

As another dissenting judge recently explained:

---

[46] (...continued)
restitution." *Id.* at 600 n.101 (quoting *Lapp v. State*, 220 P.3d 534, 540 (Alaska App. 2009)). But *Grubb* was not addressing the right to a jury trial. Moreover, as noted above, the criminal restitution statutes establish a damages remedy, and the right to a civil jury trial would therefore seemingly apply if the right to a criminal jury trial does not. *See Curtis v. Loether*, 415 U.S. 189, 194 (1974) ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law."); *Loomis Elec. Prot., Inc. v. Schaefer*, 549 P.2d 1341, 1344 (Alaska 1976) ("Similarly, in the instant case, where part of the relief sought is compensatory and punitive damages, we believe that Art. I, Sec. 16, of the Constitution of Alaska guarantees the parties the right to a jury trial.").

[47] *Loomis Elec. Prot.*, 549 P.2d at 1344 n.16 (citing *Johansen v. State*, 491 P.2d 759 (Alaska 1971) (contempt proceedings for non-payment of child support); *R.L.R. v. State*, 487 P.2d 27 (Alaska 1971) (delinquency proceedings under Children's Rules); *State v. Browder*, 486 P.2d 925 (Alaska 1971) (proceedings for direct criminal contempt); *Baker v. City of Fairbanks*, 471 P.2d 386 (Alaska 1970) (prosecution for violation of a city ordinance)).

[48] *Browder*, 486 P.2d at 937 (footnote omitted).

When viewed collectively, [the many cases declining to extend *Apprendi* to restitution] may appear to provide overwhelming support for finding that *Apprendi* does not apply to restitution orders. However, when read individually, these cases fail to provide a consistent or clear rationale for why *Apprendi* should not apply to restitution. . . . I would find the Sixth Amendment applies to restitution orders. Restitution is part of the "criminal prosecution" to which that Sixth Amendment jury trial right attaches. Courts award it in a criminal proceeding as part of a criminal sentence. Imposing it serves punitive aims and not paying it has punitive consequences. Juries, not judges, were historically required to find the amount of restitution based on facts alleged in the indictment. And under *Southern Union*, present-day juries must also decide restitution for the same reasons they must find the facts needed to award criminal fines.[49]

I agree with this analysis. And for these reasons, I respectfully dissent.

---

[49] *Arnett*, 496 P.3d at 943 (Standridge, J., dissenting).